## Belshoover's Executors *versus* Brandt.

A testator directed his executors to sell his real estate, not specifically devised, and he also gave and bequeathed the whole residue of his estate, when sold, *to be equally divided* between his five sons, and his four daughters, *share and share alike;* and he provided, that "in making this distribution no account is to be taken of any advancements made by me to either of them heretofore, as in that respect I consider all as settled; and in making the said distribution it is my will, that as the payments come to the hands of my executors, the shares of my daughters shall be first paid out, and then those of my sons respectively, according to their several ages."

The estate was sold by the executors, one-half of the purchase-money payable on 1st April, 1848, and the residue in three equal annual instalments without interest.

*Held,* that the sons who were to be *last* paid were not to be allowed for the difference between the time of payment of their shares and those of the daughters.

ERROR to the Common Pleas of *Cumberland county.*

This was an amicable action entered in the name of Catherine Brandt *v.* Michael G. Belshoover and others, executors of the will of George Belshoover, deceased. The parties agreed to certain facts to be considered in the nature of a special verdict, with leave to either party to take a writ of error without oath or bail. The instalments of the purchase-money referred to in the case, *did not bear interest.*

The case was stated as follows:—George Belshoover died seised of some personal and a large real estate, having first made his will, dated the 28th June, 1845, by which he authorized his executors to sell his real estate not specifically devised, and then adds: "I give and bequeath the whole residue of my estate when sold, to be equally divided between my five sons, Michael G., George, Jacob, John, and Daniel, and my four daughters, Catherine, Betsy, Rachel, and Sally, share and share alike: and in making this distribution, no account is to be taken of any advancements made by me to either of them heretofore, as in that respect I consider all as settled; and in making the said distribution, it is my will that as the payments come to the hands of my executors, the shares

[Belshoover's Executors *v.* Brandt.]

of my daughters shall be first paid out, and then those of my sons respectively, according to their several ages." The real estate of the testator was sold by the executors for twenty thousand dollars, upon the terms of payment one-half on the 1st April, 1848, and the residue in three equal annual payments. The question presented is, whether in the distribution of the estate under the will there must be perfect equality between the legatees; or whether the daughters and the sons, according to their respective ages, are entitled to the entire advantages which priority in time of payment affords them; or, on the contrary, whether those paid *last* shall be equalized by the allowance of interest with those who shall be paid *first.* If the Court should be of opinion that the legatees under the will are not to be equalized *by interest*, then judgment to be entered for the plaintiff for one hundred dollars, otherwise judgment to be entered for the defendant. The whole will to be considered as part of this case.

The will of the testator, proved 29th April, 1846, contained provisions to the following effect:—

The testator made certain specific bequests to his widow, and gave direction with regard to the maintenance of his youngest son, Daniel, to whom also he made certain bequests of personal property, and then devised to him several pieces of land, amounting altogether to 165 acres, charged with encumbrances in favor of the widow, and which the testator valued at $5950. $1000, part thereof, he gave to his said son, Daniel, to make him equal with his other brothers, each of whom had received that sum as an advancement; he also to retain $400 of it, the price of a team which had also been advanced to the other brothers; also to retain $500, the interest of which was to be paid to his mother during her life, and after her decease to pay the same to the executors as part of the residue of his estate. $500 more of it to be paid by Daniel when he arrived at 22 years of age, and the residue of the valuation to be paid in annual payments thereafter of $500 each, until the whole was paid. The land devised to Daniel to be rented by the executors till he arrives at age, for his benefit. The testator then proceeds:

" All the rest and residue of my *personal property* not herein specifically bequeathed, I direct my executors to sell and dispose of by public vendue, as soon after my decease as convenient; and I also direct them, my said executors, to rent out the residue of my mansion farm, &c.; also my farm over the creek, &c., to be rented out by them for the best price they can, either publicly or privately, until my said son Daniel is of age, the said rents after paying taxes and repairs, together with the proceeds of my personal estate, to form a fund for the payment of my debts and expenses, and the legacies to my other children as hereafter directed. It is further my will, that when my said son Daniel

[Belshoover's Executors *v.* Brandt.]

arrives at the age of 21 years, my executors hereinafter named shall sell and dispose of all my real estate wheresoever situate, as soon thereafter as they can for a fair price; and I hereby authorize my executors to make and execute to the purchaser or purchasers all such deeds, as may be necessary in law for the granting and confirming to them of the title to the said estate in fee simple, but in making such sales it is my will, that the residue of my mansion farm and fifteen acres of woodland, adjoining the twenty devised to my son Daniel, shall be last sold; and that he, my said son Daniel, shall have the offer of taking it at the price at which it is sold, and on his refusal it shall be sold at the discretion of my executors, as before mentioned. I further will and bequeath the whole residue of my estate when sold, *to be equally divided* between my five sons, Michael G., George, Jacob, John, and Daniel, and my four daughters, Catherine Brandt, Betsy Harman, Rachel Larue, and Sarah Vanasdale, share and share alike; and in making this distribution, no account is to be taken of any advancements made by me to either of them heretofore, as in that respect I consider all as settled, &c.; and in making the said distribution, it is my will, that as the payments come to the hands of my executors, the shares of my daughters shall be first paid out, and then those of my sons respectively, according to their several ages, &c. &c.'

*Opinion of the Court.*—" George Belshoover, by his last will and testament, directed his executors to sell his real estate, not specifically devised, and adds: 'I give and bequeath the whole residue of my estate when sold, to be equally divided between my five sons and four daughters (naming them), share and share alike.' He further directs, 'and in making the said distribution, it is my will, that as the payments come to the hands of my executors, the shares of my daughters shall be first paid, and then those of my sons respectively, according to their several ages.'

" The real estate of the testator was sold by his executors, under the power in the will, to the amount of $20,000; one-half the purchase-money payable 1st April, 1848, and the balance in three equal annual payments. The question presented is, whether each legatee shall receive an equal amount of the fund for distribution, at the times of payment designated by the testator, or whether they shall be equalized for the difference in time of payment, by allowing those last paid interest in addition to the shares first distributed.

" The intention of testator is the governing principle in the construction of a will; and this intention is to be extracted from the words and language of the whole will.

" In this case we consider the direction of the testator as clear and unambiguous, and expresses his intent and meaning in language plain and intelligible.

" He directs the residue of his estate to be divided between his

[Belshoover's Executors *v.* Brandt.]

nine children, share and share alike; but in making the distribution or division thus directed, he says it is his will that the shares of his daughters shall be first paid. He directs equality in amount, but difference in time of payment. All are to receive 'share and share alike,' but the daughters are to receive their shares first. All are to receive equal shares, but at different times.

"But it is argued that those first paid receive a benefit from the use and enjoyment of their legacies for three years prior to those who will be last paid, which destroys the equality to be effected by equal distribution. Be it so. We cannot say the testator did not intend this benefit. It would be making a will for him, not giving a construction to the one he has made, to say, that because the mode and time of payment he has directed is not alike beneficial to all his legatees, the difference in time of payment shall be compensated by inequality of distribution. For example, say each share would be $2000, if the whole fund was reduced to its present worth in 1848. To pay a daughter $2000 in 1848, and a son $2360 in 1851, would surely not be distributing the estate share and share alike, and paying the daughters out of the first moneys that would come to the hands of the executors. The testator evidently contemplated that his real estate would be sold on time, and not for cash. The property which he directed his executors to sell was valuable; and it is usual to sell such estates in payments. This mode of making sale, it is fair to infer, was in his mind when he directed 'that as the payments come to the hands of my executors, the shares of my daughters shall be first paid, and then those of my sons.'

"But, it may be asked, in support of the construction contended for by defendants, why would testator confer an advantage on his daughters to the prejudice of his sons? It is a sufficient answer to say he has thus willed it in words too plain to be controlled by any supposed benefit or injury resulting to the different legatees.

"But, were it necessary to look beyond the language of the testator to find a reason for the benefit conferred on his daughters, by directing that their shares should be first paid, it might be found in the fact that his sons had received advancements to the amount of $1400 each, except Daniel, to whom he gives a like sum, to equalize him with his brothers, in addition to his equal share of the residue.

"We are of opinion that the testator intended the residue of his estate should be equally divided among all his children, each to receive their share at the times mentioned in the will; and that those last paid are not entitled to interest."

Judgment for *plaintiff.*

It was assigned for error, that the Court erred in entering judgment for the plaintiff instead of the defendants.

[Belshoover's Executors *v.* Brandt.]

*Biddle*, for plaintiff in error.—The only question in this case is whether by the clause in the testator's will, " I give and bequeath the whole residue of my estate when sold to be *equally divided* between my five sons Michael, George, Jacob, John, and Daniel, and my four daughters Catherine, Betsy, Rachel, and Sally, *share and share alike*," he intended that there should be a substantial equality in these gifts to his children, or a mere nominal one without equality in division, and not share and share alike.

Our position is, that in directing the proceeds of his real estate when sold to be equally divided among his sons and daughters, share and share alike, the testator contemplated perfect equality between them, with the single exception that the shares of the daughters should be paid out of the moneys that might first come to the hands of the executors.    *      *      *      *

In his will the decedent fixes no terms or conditions of sale, but merely directs that when his son Daniel arrives at the age of twenty-one years, his executors shall sell and dispose of all his real estate wheresoever situate, " as soon thereafter as they can for a fair price." Had he ordered that his lands should be sold and the purchase-money paid in a given number of instalments, it might have strengthened the case of the defendant in error; but this mere general direction to the executors to sell, for a fair price, without any limit to their discretion as to terms, justified them in selling for cash, or in instalments bearing interest, or on longer or shorter credits without interest, and in this way (if the judgment of the Court below is sustained) the relative amounts to be received by the sons and the daughters might have been very seriously altered by the whim or caprice of the executors. Had these executors sold for cash or for instalments bearing interest (as they might have done), the present question could not have arisen; for then, in the language of the will, the same would have been equally divided "share and share alike." On the contrary, if in the exercise of their discretion they had sold the real estate for $9000, payable in nine annual payments of $1000 each (according to the judgment of the Court below), the eldest daughter would receive her $1000 nine years before her youngest brother, whose legacy at the same time would be worth but $649. Can such a construction of this will be sustained? The testator directs his estate to be *equally* divided among his children, and yet the executors by such a construction have the arbitrary power of discriminating to the amount of $350 and more in favor of one child and against another.    *   *   * Stress is laid by the Court below on the fact that the sons had received advancements from their father to the amount of $1400 each, as a reason for the interpretation given to the will. Whether the daughters were advanced or not does not appear in the case, nor is there anything in it to show with certainty that they were not; but whether they were or were not is

unimportant, unless the express declaration of the testator in the will is disregarded; for after directing that his estate is to be divided among his children share and share alike, the will continues, "and in making this distribution no account is to be taken of any advancements made by me to either of them heretofore, as in that respect I consider all as settled."

*Watts*, contrà.—The usual course as to sales of real estate is to sell on payments to be made at different periods of time.

June 17. PER CURIAM.—The judge who ruled this cause in the Court below, discussed the only question in it at full length, and has stated the law so truly that we have nothing to add.

Judgment affirmed.